UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN M.,

                 Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

                              **DECISION AND ORDER**

                              1:21-CV-00925 EAW

## INTRODUCTION

       Represented by counsel, Plaintiff Shawn M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for SSI and DIB on March 25, 2019. (Dkt. 4 at 24, 302-310, 311-316).[1]  In his applications, Plaintiff alleged disability beginning November 2, 2018.  (*Id*. at 24, 304, 311).  Plaintiff's applications were initially denied on July 29, 2019.  (*Id*. at 24, 161, 162).  At Plaintiff's request, a telephone hearing was held on August 10, 2020, before administrative law judge ("ALJ") Sharda Singh.  (*Id*. at 53-91). On September 15, 2020, the ALJ issued an unfavorable decision.  (*Id*. at 24-42).  Plaintiff requested review by the Appeals Council, which was denied on June 16, 2021, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 6-9).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

- 4 -

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through September 30, 2021.  (Dkt. 4 at 26).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 2, 2018, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: obesity, bilateral hearing loss, depression, anxiety, posttraumatic stress disorder (PTSD), and schizoaffective disorder. (*Id.* at 27).  The ALJ further found that Plaintiff's medically determinable impairments of lower lumbar sprain, acid reflux, hyperlipidemia, vitamin D deficiency, benign prosthetic hyperplasia, and anemia were non-severe.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 28).  The ALJ particularly considered the criteria of Listings 2.10, 12.03, 12.04, 12.06, 12.15, and Plaintiff's obesity in reaching her conclusion.  (*Id.* at 28-30).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except:

> [Plaintiff] is capable of lifting and/or carrying up to 50 pounds occasionally and up to 25 pounds frequently.  He is limited to stand and/or walk for 6 hours in an 8-hour workday.  He is limited to sit for 6 hours in an 8-hour workday.  [Plaintiff] could understand, remember, and carry out simple, routine, repetitive, and non-complex tasks.  He could have occasional contact with supervisors, coworkers, and the general public.  He is limited to only

occasional changes in work setting.  The claimant would need to avoid loud noises, noisy environments, and jobs requiring use of a telephone.

(*Id.* at 30-31).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 40).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner, laundry worker, and assembler.  (*Id.* at 41).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.*).

## II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that: (1) the ALJ failed to properly evaluate Plaintiff's ability to perform work on a "regular and continuing basis," and (2) the VE's testimony failed to provide support for the ALJ's step five finding.  (*See* Dkt. 8-1 at 19-26).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.     **ALJ's Consideration of Plaintiff's Part-Time and Volunteer Work**

Plaintiff argues that the ALJ did not properly assess Plaintiff's ability to obtain a part-time job and perform volunteer work in connection with her conclusion that Plaintiff could work on a "regular and continuing basis."

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental

abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis. 20 C.F.R. §§ 404.1545, 416.945; *see also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984) ("In determining the claimant's physical ability, or residual work capacity, the Secretary must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others."). The ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," and may reach a determination that does "not perfectly correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *Matta v. Astrue*, 508 F. App'x 53, 53 (2d Cir. 2013); *see also Trepanier v. Comm'r of SSA*, 752 F. App'x. 75, 79 (2d Cir. 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole.").

Disagreement with the ALJ's findings does not provide a proper basis to challenge the ALJ's determination. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)). In other words, simply because there is conflicting evidence in the record with respect to Plaintiff's condition does not mean that the ALJ's determination is not supported by substantial

evidence.  Rather, it is the ALJ's duty to evaluate the evidence in the record and to resolve conflicts in assessing the RFC.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve." (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Here, the ALJ considered Plaintiff's prior part-time work and volunteer activities, as well as his future employment aspirations, in her decision.  For example, in connection with her step one assessment of Plaintiff's substantial gainful activity, the ALJ noted:

> A review of the claimant's earnings record shows no work activity after the alleged onset date (Ex. D3D-D10D).  The claimant testified that he has a part-time job (12-15 hours a week) as a dishwasher at a casino, but has not started working due to the Covid-19 pandemic.  While his testimony about his future work activity demonstrates that he is capable of working, the claimant has no actual earnings from this job at this time, so I must proceed to the next step in the sequential evaluation process.

(Dkt. 4 at 26).

The ALJ also mentioned Plaintiff's employment goals when evaluating the medical opinion evidence from treating provider Sheena Fant-Richardson, MSN, PMHNP-BC. The ALJ addressed MSN Fant-Richardson's opinion that Plaintiff was better suited to part-time employment and cited entries in MSN Fant-Richardson's treatment records indicating that Plaintiff was applying for several jobs and attending job fairs.  (*Id.* at 39).  Specifically, a May 7, 2019 progress note reflects that Plaintiff "is also reporting he is waiting to hear from the Maid of the Mist as he is wanting to return to work and break the cycle of isolation." (*Id.* at 649).  The note continues, "[d]uring today's session, [Plaintiff] reports he is waiting for employment.  Provider encouraged the client to consider transitioning into part-time employment as opposed to going full throttle with full-time employment."  (*Id.*).

A January 31, 2020 progress note cited by the ALJ reflected Plaintiff's search for a job and that he had recently attended a job fair and handed out resumes. (*Id.* at 632). The note indicated Plaintiff's concerns with how he handled the job fair and interviews, as well as his belief that 30 to 40 hours a week may be too much for him. (*Id.*). A February 26, 2020 progress note cited by the ALJ reflects that "[p]rovider did give [Plaintiff] a return to work with the following restrictions of no more than 4-6 hours per shift per day and no more than 3 days per week as the client is re-entering the work force on a part-time basis as a dishwasher with the casino." (*Id.* at 582).

The ALJ's decision also considered Plaintiff's volunteer activity. Plaintiff testified that he volunteered at a soup kitchen for two eight-hour shifts per week from April 2019 through October 2019. (*Id.* at 69-70). The ALJ addressed Plaintiff's volunteer work in connection with her assessment of Plaintiff's ability to interact with others by finding that Plaintiff's volunteer work was one several activities (including shopping, using social media, spending time with friends, attending community meetings, attending Alcoholics Anonymous meetings, going to the library and taking public transportation) that contributed to her conclusion that Plaintiff's limitations in this area were moderate. (*Id.* at 29). The ALJ also noted that Plaintiff stopped volunteering at the soup kitchen in October of 2019 when he started looking for work. (*Id.* at 31).

Plaintiff's involvement in volunteer activity and part-time work-related activities during the relevant period are worthy of consideration. *See Shawn C. v. Comm'r of Soc. Sec.,* No. 20-CV-1378, 2022 WL 17037624, at *3 (W.D.N.Y. Nov. 17, 2022) (finding ALJ's consideration of activities of daily living and "Plaintiff's ability to perform volunteer

work, working at the front desk at a mission center for eight to twelve hours per week" to be proper considerations); *Rebecca C. v. Kijakazi*, No. 3:21CV1125 (MPS), 2022 WL 4545846, at \*8 (D. Conn. Sept. 29, 2022) (finding substantial evidence to support RFC where ALJ considered Plaintiff's engagement in volunteer work); *Teresa G. v. Comm'r of Soc. Sec.*, No. 20-CV-0816-MJR, 2021 WL 1559177, at \*6 (W.D.N.Y. Apr. 21, 2021) (the ALJ reasonably considered "plaintiff's ability to do routine activities, work part-time, and record evidence of normal examination findings" to determine that she could perform her past relevant light work); *Annette M. v. Comm'r of Soc. Sec.*, No. 19-CV-6845S, 2021 WL 248012, at \*5 (W.D.N.Y. Jan. 26, 2021) (evidence of plaintiff working part time as a cashier and continuing to engage in significant activities of daily life supported RFC determination); *Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at \*5 (W.D.N.Y. June 21, 2019) ("An ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled."). Accordingly, there was nothing improper about the ALJ considering and discussing these activities in connection with her analysis.

Moreover, not only was it appropriate for the ALJ to take Plaintiff's volunteer and work activities into consideration in determining the RFC, but importantly, these were not the only factors relied on by the ALJ is determining Plaintiff's RFC and concluding he was capable of performing work on a regular and continuing basis. In addition to Plaintiff's

activities of daily living, the ALJ also considered and addressed Plaintiff's testimony, medical treatment records, and medical opinion evidence from multiple sources.

For example, V. Baronos, M.D., opined that Plaintiff had no exertional, postural, manipulative, or visual limitations but should avoid concentrated exposure to noise, and J. Lawrence, M.D., concurred with that opinion.  The ALJ found the findings of Dr. Baronos and Dr. Lawrence somewhat persuasive and explained her reasoning for doing so.  (Dkt. 4 at 37).   Nikita Dave, M.D., opined that Plaintiff had no limitations for verbal communications and hearing in a quiet room but should avoid loud noises, noisy environments, and jobs requiring telephone use.  (*Id.*).   The ALJ found this opinion persuasive and consistent with the record.  (*Id.*).  Hongbiao Liu, M.D., opined that Plaintiff had mild limitations for prolonged walking, bending, kneeling, squatting, climbing stairs, carrying heavy items, and prolonged sitting or standing, and no substantive limitations arising from hearing loss.  The ALJ found Dr. Liu's opinions persuasive and consistent with the record.  (*Id.*).  T. Bruni, Ph.D., opined that Plaintiff had moderate psychiatric limitations and retained the ability to perform simple and low contact work.  E. Gagan, M.D., concurred with Dr. Bruni's opinions.  The ALJ concluded that the opinions of Dr. Bruni and Dr. Gagan were persuasive and consistent with the record and provided reasons for that conclusion.  (*Id.* at 38)  Gregory Fabiano, Ph.D., opined that Plaintiff had mild limitations in understanding, remembering, or applying simple directions; moderate limitations in understanding and remembering complex directions and interacting with others; and no limitations in using reason and judgment to make workplace decisions, sustain concentration and regular attendance, and maintain personal hygiene.  (*Id.*).  The

ALJ found Dr. Fabiano's opinion persuasive and consistent with the record.  Finally, the ALJ considered the opinions of MSN Fant-Richardson and Megan Daunce, Plaintiff's counselor.  (*Id.* at 38-39).  The ALJ concluded that the opinions of MSN Fant-Richardson and Ms. Daunce were less persuasive, concluding that the opinions were not supported by treatment records or consistent with his activities of daily living.  (*Id.* at 39).  As is evident, in addition to information concerning Plaintiff's part-time work and volunteer activities, the ALJ had the benefit of multiple medical opinions addressed to Plaintiff's abilities and limitations.  Further, in addition to these medical opinions, the ALJ also noted that Plaintiff's mental impairments responded well to treatment, including psychotherapy and medication.  (*Id.*).

In sum, while the ALJ did certainly consider Plaintiff's work activities and volunteer work in connection with her RFC determination, these activities were but one of many items of evidence relied on by the ALJ and did not provide the sole basis for her conclusion that Plaintiff was capable of full-time work.  *See Lisa T. v. Comm'r of Soc. Sec.*, No. 1:21-CV-469-DB, at *11 (W.D.N.Y. Jan. 17, 2023) ("Plaintiff's assertion that the ALJ erroneously relied on her reported daily activities because her ability to perform them does not show that she could perform work on a regular and continuous basis is similarly meritless.  The ALJ did not rely on Plaintiff's daily activities to show that she could perform full-time work at the level of the RFC, but rather to demonstrate that Plaintiff was not as debilitated by her impairments as she alleged." (citations omitted)).  It is the function of an ALJ to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta*, 508 F. App'x at 56.  The ALJ adequately explained

the reasons for her conclusions and the Court finds that substantial evidence supports the determination.  Accordingly, remand is not warranted on this basis.

### B.    Reliance on the Vocational Expert

Plaintiff argues that the ALJ's step five analysis was unsupported by substantial evidence because the ALJ erred in relying on the testimony of the VE regarding jobs that exist in significant numbers in the national economy.  The Court disagrees.

At step five of the sequential analysis, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010).  However, "[i]f a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Melendez v. Astrue*, 630 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (quotation omitted).   Accordingly, in assessing the adequacy of the hypothetical questions posed to a VE, the Court will find error "where there was no evidence to support the assumption underlying the hypothetical." *Santos v. Astrue*, 709 F. Supp. 2d 207, 211 (S.D.N.Y. 2010) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).  "[A]lthough vocational experts customarily offer three jobs that a claimant perform as part of their testimony, the ALJ does not have a corresponding duty to find that each of the three jobs offer significant numbers of jobs in the national economy: one occupation is sufficient." *Angi W. v. Comm'r of Soc. Sec.*, No. 21-CV-0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023); *see also Bavaro v. Astrue*, 413 F. App'x

- 13 -

382, 384 (2d Cir. 2011) ("The Commissioner need show only one job existing in the national economy that Bavaro can perform.").

In this case, the ALJ's conclusion that Plaintiff was capable of a limited range of medium work was fully supported by the testimony and medical evidence described above. The Court finds no error in the hypotheticals posed to the VE, which mirrored the RFC assessment and were supported by substantial evidence. (Dkt. 4 at 87); *see also Priel v. Astrue*, 453 F. App'x 84, 87-88 (2d Cir. 2011) (holding that "the ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected"); *Vazquez v. Colvin*, No. 5:15-CV-485, 2016 WL 5173278, at *10 (N.D.N.Y. Sept. 20, 2016) ("Because the RFC is supported by substantial evidence, the Court finds no error in the questions presented to the VE[.]").

Based upon the hypotheticals, which included restrictions from "loud noises and noisy environments," the VE determined that Plaintiff could not perform his past relevant work as a salvage laborer or automobile service station attendant but identified three jobs that Plaintiff could perform: cleaner, laundry worker, and assembler. (Dkt. 4 at 87). Plaintiff contends that the noise limitation identified in the RFC does "not clearly articulate in functional terms the nature and degree of Plaintiff's limitations, and is not specific enough to allow this reviewing Court to make an informed judgment regarding the extent of the erosion of the occupational base." (Dkt. 8-1 at 24). The Court disagrees.

The Dictionary of Occupational Titles and companion Selected Characteristics of Occupations ("SCO") identify the noise intensity levels for certain occupations, ranging from a range of level 1 defined as "very quiet," level 2 of "quiet," level 3 of "moderate,"

level 4 of "loud" and up to a level 5 of "very loud."[2] *Bridget P. v. Comm'r of Soc. Sec.*, No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *13 (N.D.N.Y. Mar. 8, 2023) ("The Department of Labor categorizes noise by five levels: 'Very Quiet', 'Quiet', 'Moderate', 'Loud', 'Very Loud'").  The past relevant occupations ruled out by the VE both have noise intensity levels of "loud," whereas the "cleaner" job identified by the VE has a noise level of 2 or "quiet," and the "laundry worker" and "assembler" positions are identified as noise level 3, or "moderate."

Plaintiff contends that the RFC limiting Plaintiff to positions that "avoid loud noises" or "noisy environments," is not specific enough to make clear which noise intensity levels would be applicable to his abilities.  But even were the Court to agree that a failure to specify the noise intensity level applicable to Plaintiff's limitations was error, any error would be harmless, where as here, it is clear that the ALJ's restrictions on loud environments would not preclude work in at least one, if not all, of the positions identified. *Bridget P.*, 2023 WL 2402782, at *13 ("This Court has previously concluded that jobs which have a moderate noise level are consistent with an RFC limiting the plaintiff to avoiding concentrated exposure to excessive noise."); *Lisa T.*, 2023 WL 203363, at *10 ("Because the DOT describes the noise level of Plaintiff's past work as a customer service representative as moderate, which is less than loud, the job is within the parameters of the

---

[2]     The SCO provides the following examples for each category:  level 1 very quiet (isolation booth for hearing test; deep sea diving; forest trail); level 2 quiet (library; many private offices; funeral reception; golf course; art museum); level 3 moderate (business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours); level 4 loud (can manufacturing department; large earth--moving equipment; heavy traffic); and level 5 very loud (rock concert--front row; jackhammer in operation; rocket engine testing area during test).

ALJ's hypothetical RFC precluding Plaintiff from working in an environment with loud noises."); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.") (alterations and citations omitted)).  Indeed, the noise levels of the positions identified are also consistent with Plaintiff's testimony at the telephonic hearing, where after noting that Plaintiff did not seem to have trouble hearing, the ALJ specifically asked Plaintiff about any difficulties in hearing and he replied, "only in an environment where there is lots of noise, like a factory," and that "loud noises bother me." (*Id.* at 82).

As a result, it is reasonable to conclude that the positions identified conformed with the limitations in Plaintiff's RFC and the ALJ was within her discretion to rely on the testimony of the VE to decide that there existed jobs in significant numbers in the national economy Plaintiff could perform.   As a result, remand to the Commissioner is not warranted on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.


_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 27, 2023
       Rochester, New York